IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

Vs.                                              Nos.  96-40082-01-SAC

THOMAS W. HARRIS,

        Defendant.

MEMORANDUM AND ORDER

        The defendant Thomas W. Harris moves the court to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) granting him compassionate release and adding to his supervised release the requirement that he serve an 18-month term of home confinement in lieu of his remaining term of incarceration. ECF# 243. Mr. Harris argues five grounds in his motion:  1) there are factors present contributing to more serious risks if COVID-19 is contracted; 2) he has served most of his sentence; 3) he is incarcerated at a facility which has had the largest outbreak of COVID-19; 4) the balance of his sentence of incarceration can be served in home confinement as a term of supervised release; and 5) the First Step Act's elimination of stacked sentences for 18 U.S.C. § 924(c) convictions creates a gross disparity in the sentence he received and the sentence he would receive today. The government responds opposing the defendant's motion. ECF# 244. The defendant filed a reply focusing on that he is forty-five years old and has been in custody since the age of 21 years; that he faces the risk of COVID-19 reinfection due to his hypertension, race, and previous contraction of this virus; that he would not receive today the long sentence caused by

stacking of the 18 U.S.C. § 924(c) convictions; and that his post-conviction conduct supports his request. ECF# 245.

The Tenth Circuit summarized the facts behind this case in this way, "Between September 9 and October 21, 1996, Thomas W. Harris and his cohort, Derrick Johnson, committed seven robberies—three in the District of Kansas and four in the Western District of Missouri.  During the robberies, Harris was armed with a .357 caliber revolver." ECF# 231, p. 1. Mr. Harris pled guilty to counts one through five of the indictment that charged him with three counts (1, 3 and 5) of violating 18 U.S.C. § 1951 (Hobbs Act robbery) and two counts (2 and 4) of violating 18 U.S.C. § 924(c) (Possession of a firearm during a crime of violence), and he was sentenced to a total term of 360 months custody.[1] (Dk. 159). Mr. Harris filed a direct appeal which was dismissed for lack of jurisdiction and for being frivolous. (Dk. 179). In 2016, Mr. Harris filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 arguing that his § 924(c) convictions did not involve crimes of violence and that the residual clause was unconstitutional by reason of *Johnson v. United States*, 576 U.S. 591 (2015). (ECF# 186). The district court denied Mr. Harris' motion following the precedent that a Hobbs Act robbery conviction categorically qualified as a crime of violence under § 924(c)(3)'s elements clause.  ECF# 213. Because the district court's decision was not reasonably debatable, the Tenth Circuit denied a certificate of appealability and dismissed the putative appeal. ECF# 231.

---

[1] The court granted the government's motion for a downward departure on counts 1, 3, 5 from 121 months to 60 months, and sentenced Harris to consecutive terms of 60 months on count 2 and 240 months on count 4. The parties' plea agreement, accepted by the court, provided that the government would file a downward departure motion if Harris provided substantial assistance, but that Harris could not request a sentence of less than 30 years. *United States v. Harris,* 185 F.3d 875, 1999 WL 446011, at *1 (10th Cir. Jul. 1, 1999) (Table).

Mr. Harris is currently incarcerated at FCI Seagoville with an earliest release date of June 11, 2022. His counsel submitted to the warden a written letter dated October 8, 2020, requesting compassionate release, and more than 30 days have passed. His medical records show he has received medication for hypertension after high blood pressure tests in 2019, and his test results in 2020 show some improvement. Mr. Harris notes that the Center for Disease Control has listed hypertension as a factor that can increase the seriousness of a COVID-19 illness. His medical records also show that he tested positive in July with a diagnosis that, "he is not severely immunocompromised and did not have a severe illness requiring hospitalization." ECF# 244, p. 18. Based on these medical records, the government concedes that the defendant has shown extraordinary and compelling reasons under § 3582(c)(1)(A). ECF# 244, p. 18. The government opposes release, however, because these circumstances when weighed against the other § 3553(a) factors do not "demonstrate a situation so severe that early release . . . is warranted." ECF# 244, p. 19.

Mr. Harris is currently incarcerated at FCI Seagoville, a low security facility that houses just over 1700 inmates. As of December 15, 2020, the BOP has just under 125,000 inmates in BOP-managed institutions and currently there are 6,023 inmates and 1,759 staff with positive tests of COVID-19. Over 26,000 inmates and 2,390 staff have recovered with 163 inmate deaths and two staff deaths. At FCI Seagoville, there are currently only 14 inmates and one staff with positive tests, but 1,275 inmates and 39 staff have recovered. BOP Website, *COVID-19 Coronavirus* (Viewed December 15, 2020), at https://www.bop.gov/coronavirus/.

The settled law is that a "district court is authorized to modify a defendant's sentence only in specified instances." *United States v.* White, 765 F.3d 1240, 1244 (10th Cir. 2014) (internal citation omitted), *cert. denied*, 574 U.S. 1101 (2015). Such instances are specified in 18 U.S.C. § 3582(c) and include, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Thirty days have passed since the warden received the request from the defendant Harris to bring a § 3582(c)(1)(A) motion.

"Under that statute, a district court may reduce a sentence if, after considering any applicable sentencing factors in 18 U.S.C. § 3553, it finds 'extraordinary and compelling reasons warrant such a reduction' and the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Haynes*, 827 Fed. Appx. 892, 895 (10th Cir. 2020) (unpub.) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). The Tenth Circuit in *Haynes* summarized the applicable policy statements:

> As authorized by 28 U.S.C. § 994(t), the Sentencing Commission issued a policy statement recognizing four categories of "extraordinary and compelling reasons" for § 3582(c)(1)(A)(i): "(A) Medical Condition of the Defendant," "(B) Age of the Defendant," "(C) Family Circumstances," and "(D) Other Reasons," defined as "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons," U.S.S.G. § 1B1.13, cmt. n.1.

827 Fed. Appx. at 895. Thus, a defendant's request for resentencing must be based on a specific category "authorized by § 3582(c)," or "the district court lack[s]

4

jurisdiction to consider request." *United States v. Saldana*, 807 Fed. Appx 816, 819 (10th Cir. 2020) (citations and internal quotation marks omitted).

Finding that Harris exhausted his administrative remedies, the next determination is whether extraordinary and compelling reasons exist. The government concedes that Harris has such a reason. Because the COVID-19 pandemic is a threat to everyone, the government posits that the pandemic is not an extraordinary and compelling reason in itself, but it may become one when the inmate has a medical condition that elevates the inmate's risk of becoming seriously ill from COVID-19. Harris argues his serious hypertension is such a medical condition along with the circumstances of his African-American race, his prior positive test, and the high infection rates at FCI Seagoville. The government acknowledges that, "[u]nder the circumstances, the defendant has established extraordinary and compelling reasons pursuant CDC and/or DOJ guidelines allowing for consideration of compassionate release under Section 3582(c)(1)(A)." ECF# 244, p. 18.

The court now must balance the applicable factors under 18 U.S.C. § 3553(a). In particular, the court "takes into account facts and circumstances that have emerged since the court's original sentencing decision." *United States v. Luis Villa-Valencia*, No. 16-20008-07-DDC, 2020 WL 7263894, at *3 (D. Kan. Dec. 10, 2020) (citations omitted). At the same time, "[w]hen the difference between the original sentence and the sentence proposed by a motion under § 3582(c)(1)(A)(i) presents a gap too large, the § 3553(a) factors are unlikely to support the requested sentence reduction, even where a defendant faces extraordinary and compelling

circumstances." *United States v. Pugh*, No. 15-40018-05-DDC, 2020 WL 7042614, at *3 (D. Kan. Dec.1, 2020).

Mr. Harris committed these offenses when he was the youthful age of 21 years. His prior criminal history was not particularly noteworthy. He now is 45 years old having spent more than one-half his life incarcerated. His offenses of conviction were violent felonies involving weapons for which he received sentencing enhancements resulting in a longer term of incarceration, most of which he has served. While in custody, Mr. Harris has completed his GED and numerous courses for improving job skills and financial responsibility. His prison employment includes 17 years as a food service clerk.

The government concedes that the defendant's medical records confirm medical conditions that establish extraordinary and compelling reasons. Harris appears to have serious hypertension that has been improving with medical treatment. Nonetheless, the court will not speculate from this record that the seriousness of this medical risk to Harris no longer qualifies as a factor favoring a sentence reduction. The risk of contracting COVID-19 again is a viable consideration. *See United States v. Collins*, No. 10-20129-17-KHV, 2020 WL 7263896, at *4 (D. Kan. Dec. 10, 2020). The factor takes on more significance when considering the very high number of inmates who have had COVID-19 at FCI Seagoville and particularly when the institution has no pending tests.

The government acknowledges that Harris "does not appear to pose any significant or immediate danger to the community." ECF# 244, p. 19-20. The government does contend that "a reduction to time-served would nevertheless run

6

counter relative to the nature and seriousness of his offenses and the need for his sentence to continue to provide just punishment and otherwise promote respect for the law." *Id.* at 20. Harris reports his last disciplinary incident was 14 years ago, and the government agrees that Harris "has had a relatively disciplinary-free term of incarceration." ECF# 244, p. 21.

The government's opposition rests principally on the length of the sentence matching the seriousness of the offenses and serving the purposes of a just sentence that promotes respect of the law. The court, however, is persuaded that Harris has served enough time to fulfill these sentencing factors. If he were to be sentenced today after the First Step Act, his sentence would be 180 months (15 years) rather than 360 months (30 years). His continued incarceration would be disproportionate to the seriousness of the offense and to what Congress now deems a just sentence. *See United States v. Bryant*, 2020 WL 2085471, at *5 (D. Md. April 30, 2020), *aff'd, United States v. McCoy*, --- F.3d ---, 2020 WL 7050097, at *12 (4th Cir. Dec. 2, 2020) (Individualized determinations of all relevant sentencing factors, including the First Step Act's change to the sentencing law "is neither inconsistent with any 'applicable' Sentencing Commission guidance nor tantamount to whole sale retroactive application of the Frist Step Act's amendments to § 924(c)."). Harris already has served over 24 years or more than 80% of his original sentence. The BOP's posted release date for Harris is June 11, 2022. As the BOP site explains, this date "reflects the inmate's statutory release date (expiration full term minus good conduct time)." BOP Website, *Inmate Locator Information,* (viewed December 15, 2020) https://www.bop.gov/inmateloc/about_records.jsp. The approximately 18

7

months of remaining incarceration after good time credit means Mr. Harris has effectively served approximately 95% of his sentence. When the 18 months of home confinement is added to his supervised release, the court is satisfied that a reduced sentence here is consistent with the nature and seriousness of the offenses, provides just punishment, deters crime, and promotes respect for the law. *See United States v. Collins*, No. 10-20129-17-KHV, 2020 WL 7263896, at *4 (D. Kan. Dec. 10, 2020).

Based on the above weight of the different § 3553(a) factors, the court finds that a sentence of time served with a special term of supervised release including home confinement of 18 months is sufficient, but not greater than necessary to reflect the seriousness of the offense, afford adequate deterrence, protect the public, and provide Mr. Harris the needed treatment in the most effective manner. The court reduces the defendant's sentence of 360-months' incarceration to time served but with an alternative to incarceration, that is, a special term of supervised release of home confinement to commence immediately on his release and to expire eighteen months later. During the special term of supervised release, Mr. Harris will remain on home detention with location monitoring equipment. The defendant shall remain subject to his standard term of supervised release and serve the rest of his supervised release (18 months) which will commence immediately after the expiration of the special term of supervised release.

IT IS THEREFORE ORDERED that defendant Harris's motion for compassionate release [ECF# 243] is granted, and the court reduces the defendant's sentence of 360 months' incarceration, originally imposed on October 14, 1998, to time served. Upon his release from incarceration, the defendant shall immediately

commence a special term of supervised release, as an alternative to incarceration, which will expire 18 months later. All terms and conditions that apply to the defendant's standard term of supervised release shall apply to the defendant's special term of supervised release. In addition, during the special term of supervised release, the defendant shall be on home confinement with location monitoring equipment. During the first 15 days of his special term of supervised release, defendant shall self-quarantine. After the special term of supervised release expires, the defendant will begin serving immediately the remaining 18 months of his standard term of supervised release.

Dated this 17th day of December, 2020, Topeka, Kansas.

/s Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge